# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROSS JENKINS,

    Petitioner,

v.                                               Civil Action No. 5:15cv159
                                               (Stamp)

MARVIN PLUMLEY

    Respondent.

## REPORT AND RECOMMENDATION

On December 7, 2015, the *pro se* Petitioner, Ross Jenkins, an inmate in the custody of the West Virginia Division of Corrections, filed an Application for Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On December 30, 2015, Petitioner was granted leave to proceed *in forma pauperis*, but was required to pay the $5 filing fee. ECF No. 11. On January 13, 2016 Petitioner paid the required fee. ECF No. 13.

On March 18, 2016, the undersigned conducted a preliminary review of the file, determined that summary dismissal was not appropriate at that time, and directed the Respondent to show cause why the petition should not be granted. On May 27, 2016, the Respondent filed a response to the petition [ECF No. 19], and a Motion for Summary Judgment. ECF No. 20. On May 31, 2016, a Roseboro Notice was entered. ECF No. 22. On July 21. 2016, the Petitioner filed his response.

## I. Procedural History

### INITIAL SENTENCING AND RESENTENCING

In February of 1995, the Petitioner was indicted on one count of burglary without

breaking and entering, in violation of West Virginia Code § 61-3-11(a) and two counts of second-degree sexual assault, in violation of West Virginia Code § 61-8B-4. The Petitioner's jury trial concluded on November 8, 1995, with convictions on all three counts. In December of 1995, the State filed an information pursuant to the recidivist statute, West Virginia Code § 61-11-18 and 19. A subsequent jury determined that the Petitioner had been convicted of two prior felonies. ECF No. 19-14 at 2.

On February 16, 1996, the circuit court held a sentencing hearing. The Petitioner appeared in person and with counsel, Shirley Stanton. ECF No. 27-2 at 2. Although acknowledging that it had no case law to support the same, the State requested that the Petitioner be sentenced to life in the penitentiary, consecutively, for each of the three counts. *Id.* at 16. Following discussion, the Court imposed the following sentence:

> In regard to Count I, burglary, one (1) to fifteen (15) years; in regard to Count II, ten (10) to twenty five (25) years; and in regard to Count III, ten (10) to twenty five (25) years. Each of those sentences are to run consecutive and not current.
>
> I will, then, pursuant to the jury's decision on the 8th of November, 1995, pursuant to their decision that in fact Mr. Jenkins was twice previously convicted of felonies, which would, in regard to that statute as aforesaid, at this time require the Court to impose a sentence of life, and I'll do so at this time.

ECF No. 27-2 at 21-22.

Thereafter, the State inquired whether it was to interpret the ruling on the sentence of life to be one life sentence for all. ECF No. 27-2 at 22. The Court responded that it was one life sentence because it did not believe that under the statute it could impose more than one life sentence. *Id.* at 22-23. Based on the Court's response, the State then moved

to withdraw the matter of filing the habitual criminal, "because with a life sentence, he's eligible for parole of fifteen years, and by individual consecutive sentences, he's eligible for parole in 21 years." *Id.* at 23. The Court then granted the State's motion to withdraw the recidivist information and sentenced the Petitioner to terms of 1 to 15 years for the burglary conviction and two 10 to 25 years sentences for the sexual assault in the second degree, for an aggregate sentence of 21 to 65 years. ECF No. 1-2 at 4.

On November 21, 2012, the Petitioner filed a *pro se* Motion for Correction of Sentence, and the Circuit Court subsequently appointed Frances Whiteman to represent him. The basis of the Petitioner's motion was his opinion that the original sentencing court erred in permitting the State to withdraw the recidivist information. The Petitioner theorized that the court was legally bound to impose the recidivist penalty and requested that the court correct the unlawful sentence imposed on February 23, 1996.

On October 23, 2016, a hearing was conducted on the Petitioner's Motion for Correction of Sentence. Counsel for the Petitioner noted that:

> [t]he major thrust of the motion is that he should be sentenced on the recidivist pursuant to the recidivist statute. He believes that the Court before was wrong to have not sentenced him under the recidivist. He believes that one recidivist sentence should be imposed and the sentences on the sexual assaults and the burglary should in effect go away.[1]

ECF No. 1-4 at 4.

During the hearing, the State conceded that it was inappropriate for the Court to

---

[1] For purposes of this Court's discussion of ineffective assistance of counsel, *infra*, it should be noted that aside from pointing out that the Petitioner was not in court when his original sentence was imposed and request that any sentences imposed be run concurrently, counsel stood silent during the resentencing hearing.

allow the withdrawal of the recidivist information. However, it contended that the Petitioner had a misconception about how the recidivist statute works. More specifically, the State argued that he the Petitioner was not entitled to one recidivist sentence, but rather, that he faced sentencing on the original three counts as well as a recidivist sentence.[2] Accordingly, while the State did not object to a correction of the sentence, it requested that the Court impose it as the law intended it and not as the Petitioner believed that it should be imposed. *Id.* at 5-6.

The court then went through a lengthy and somewhat convoluted explanation of the sentencing choices from which the Petitioner could choose:

> If you are sentenced under the recidivist statute, one of these sentences has to be enhanced for the recidivist purpose. But only one. All right? The recidivist sentencing does not apply to all three counts. It only applies to one of the counts. And the State versus Housden case articulates that very clearly. So here's your kind of two options. If you are sentenced to – let's say Count I, the burglary charge. If you receive the recidivist enhancement for that charge, rather than a 1 to 15, it would be a life sentence. Eligible for parole in 15 years. So essentially a minimum 15 year sentence. All right. So that's 15 years on the burglary. Second degree sexual assault, 10 to 25, that's for Count II. Second degree sexual assault, 10-25,

---

[2]W.Va. Code § 61-11-19 states that a prosecuting attorney must seek a recidivist penalty for a convicted defendant prior to sentencing when the prosecutor has knowledge of that defendant's prior felony convictions, by filing a recidivist information with the court. The criminal defendant is then entitled to a separate jury trial wherein the jury must find that he is the same individual identified within the prior felony convictions. *Id.* If the jury does so find, the court must sentence the convicted defendant to "such further confinement as is prescribed by [W.Va. Code § 61-11-11] on a second or third conviction as the case may be." Where, as here, the defendant has been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined for life. W.Va. Code §§ 61-11-18 and 61-11-19 command that a circuit court is "without authority to impose any sentence other than as prescribed [within the recidivist statutes]." Syl. Pt. 3, *State ex rel. Cobb v. Boyles*, 149 W.Va. 365, 141 S.E.2d 59 (1965). In West Virginia, the recidivist enhancement is applied to only one conviction when multiple convictions are rendered on the same day, and the sentencing court typically has discretion as to whether to run the sentences consecutively. *See* Syl. Pt. 3, *State v. Housden*, 184 W.Va. 171, 399 S.E.2d 882 (1990).

-4-

that's for Count III. If you add those all up, the total is 35 to 50. Okay? Fifteen years on the burglary, 10 to 25 on second degree sexual assault,10 to 25 on the third count, second degree sexual assault. That's a 35 to 50. Now you've got a 21 to 65. So the lower end goes from 21 to 35; the higher end is reduced from 65 to 50. I don't know whether that's good for you or bad for you. That something that you have to decide, I suppose.

Let me finish. I've got just two other kind of angles to explain to you. The other option is that if one of the second degree sexual assault charges is enhanced. So you would get for the burglary a 1 to 10 – I'm sorry, a 1 to 15 on the burglary; second degree sexual assault of a life sentence, eligible for parole in 15 years, so that's a minimum of 15; and the third count of second degree sexual assault would be a 10 to 25. That would be a total of 26 years on the low end to 40 years on the high end. So it's still instead of 21 to 65, now it's 26 to 40. Okay? So your minimum sentence is increased by five years; the upper end of your sentence is reduced by 25 years. So that may be of some value to you.

The only other possibility would be if the Court would all these sentences run concurrently, run them altogether, which I suppose is what you would prefer. In that case then it would be — essentially it would be a 15 to 25, which is probably what you want…

All right. I'm disinclined to run them concurrently. I think they need to be run consecutively. That was the original order of the court and that will be my consideration as well. Recalling the facts of this case as they were presented to me to the transcripts, I think it would be appropriate to run these things consecutively.

So the decision you've got to make then, Mr. Jenkins, is whether you want to proceed with this motion. If you want me to grant the motion. Right now you've got a 21 to 65. Okay? And we can leave it at that if you withdraw your motion. The other two options are, do you want at 26 to 40 or do you want a 35 to 50. Those are your three choices. Twenty-one to 65, which is your current sentence; or 26 to 40, if I grant your motion; or 35 to 50. And if you want to have a minute to talk to Ms. Whiteman, you know, that's fine with me.

ECF. No. 1-4 at 7-9.

The Petitioner then addressed the Court on his own behalf, and argued that the original sentencing Court initially sentenced him to one life sentence for all three charges

and asked that the Court to resentence him to one life sentence for all three charges. The State then noted that even though the Petitioner was well spoken and had articulated his position very clearly, he still misunderstood the way the habitual offender statute works. Accordingly, the State asked that if the sentence was corrected, that it be an enhancement of one of the three charges. ECF No. 1-4 at 10-13.

The Court then denied the Petitioner's request for one life sentence and, with that understanding, inquired of him: "do you want me to correct the sentences and sentence you to 26 to 40, or do you want me to keep the 21 to 65? " The Petitioner responded: "I'll take the 26 to 40, Your Honor." ECF No. 1-4 at 13-14.

The 2013 sentencing court entered a sentencing order on December 3, 2013. ECF No. 1-3 at 4. The sentencing order sentences the Petitioner to 26-years-to-life. *Id.* at 2. This is a correct calculation, however, it is clearly not the option explained to the Petitioner at the hearing.

**<u>DIRECT APPEAL</u>**

The Petitioner noticed the appeal of his resentencing on December 20, 2013, and filed his formal brief on April 10, 2014. ECF Nos. 19-4, 19-5. On direct appeal, the Petitioner claimed a single assignment of error:

> 1. The circuit court subjected the Petitioner to double jeopardy by increasing the Petitioner's sentence after the Petitioner had satisfied in part a lower sentence initially ordered.

ECF No. 19-5 at 3.

The West Virginia Supreme Court of Appeals ("WVSCA") issued a Memorandum Decision on October 20, 2014, affirming the correction of the Petitioner's sentence. ECF No.

19-7. In its decision, the WVSCA recognized that "Petitioner's argument [of double jeopardy] ignores the fact that his original sentence was illegal, and that he was appropriately resentenced by the circuit court within the statutory guidelines by order entered on December 9, 2013." *Id.* at 3. The WVSCA then recognized that the Petitioner's corrected sentence was appropriate under both the statutory scheme and long-standing West Virginia case law. *Id.* at 4.

## **STATE HABEAS**

While the Petitioner's appeal was pending, he also filed for habeas relief within the circuit court. ECF No. 19-8. Specifically, the Petitioner raised three grounds for relief:

> A. Violation of the Petitioner's right to effective assistance of counsel pursuant to Article III, § 14 of the West Virginia Constitution and the Sixth Amendment of the United States Constitution as the Petitioner's counsel at the October 14, 2013, sentencing hearing was constructive[ly] [absent][,] as she did not put the State's contentions and arguments . . . To an effective adversarial testing;
>
> B. Violation of the Petitioner's rights under Article III, § 5 of the West Virginia Constitution and the Fifth Amendment to the United States Constitution['s] restrictions on double jeopardy in that the one (1) to fifteen (15) year sentence for burglary had already been served as of October 23, 2013[,] and therefore, the State, due to its prior error, could not have a second chance to obtain an enlarged sentence [;and]
>
> C. Violation of the Petitioner's rights under Article III, § 5 of [the] West Virginia Constitution and the Fifth Amendment to the United States Constitution['s] restrictions on double jeopardy in that the one (1) to fifteen (15) year sentence for burglary as imposed by the trial court . . . was already an enhanced sentence because without the underlying felony of sexual assault there could have been no burglary.

*Id.* at 6-7. The circuit court denied the petition on September 11, 2014, without hearing, before the Petitioner's direct appeal had been resolved. ECF No. 19-9.

The Petitioner appealed the denial of habeas relief to the WVSCA on October 21, 2014, one day after the Court had issued its Memorandum Decision affirming the Petitioner's corrected sentence. ECF No. 10. In his formal brief, filed January 14, 2015, the Petitioner raised the following assignment of error:

> A. Did the court below commit fundamental error, abuse its discretion, make erroneous factual findings, and/or misapply the law when it ruled that the grounds raised by Petitioner in his habeas petition had either been raised and denied, or waived, in habeas petitions filed by the Petitioner in 1998, and/or 2012?

ECF No. 19-11 at 5. Although the Petitioner alleged just this one assignment of error, he argues the three grounds for habeas relief submitted to the circuit court within the body of his brief. *Id.* at 10-15.

The WVSCA issued its Memorandum Decision on June 26, 2015, which affirmed the circuit court's denial of habeas relief. ECF No. 19-14. Specifically, the Court found that the Petitioner's arguments were "wholly derivative" of his appeal, including his argument based on ineffective assistance of counsel. *Id.* at 5 n.6. Based upon the underlying facts, the circuit court's correction of the Petitioner's illegal sentence, the award of credit for time served and its prior decision finding that the Petitioner's right to be free from double jeopardy was not impinged, the WVSCA affirmed the circuit court's September 11, 2014, Order denying habeas relief.

**<u>FEDERAL HABEAS</u>**

In his pending § 2254 habeas, the Petitioner raises the following grounds for relief:

> 1. The sentencing court violated [Petitioner's] right to be free of double jeopardy by increasing [his] sentence of twenty-one to sixty-five years to one of life plus eleven to forty years after [he] filed a motion for correction of

sentence because the sentence originally imposed by the sentencing court in 1996 (one life sentence) was a valid legal sentence under § 61-11-18 of te West Virginia Code;

  2. [Petitioner's] attorney at the October 23. 2013[,] hearing was constructively absent as she did not put the [S]tate's contentions and arguments as to the manner in which the court could sentence [him] to an adversarial testing [; and]

  3. The sentencing court violated [Petitioner's] rights under the Fifth Amendment to the United States Constitution to be free of double jeopardy in that the one to fifteen year sentence for burglary had already been served as of October 23, 2013, and therefore the State, due to its prior error could not have a second chance to obtain an enlarged sentence.

For relief, the Petitioner seeks an Order remanding "the judgment back to the West Virginia Supreme Court of Appeals with instructions that [he] be released immediately due to the double jeopardy violations or that the original sentence of <u>one</u> life term as originally ordered by the trial court on October 4, 1995[,] be reinstated[,] and the sentence imposed on October 23, 2015[,] be vacated." [emphasis in original] ECF No. 1 at 17.

### III. STANDARD OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). However, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by the habeas statue. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 362 (2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 405. A state court decision "involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id.* Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. *Id.* at 411.

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther.

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011). A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard.

Finally, determinations of factual issues by the state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This standard "reflects Congress's view that there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." *Id.* Accordingly, courts should not "casually cast aside a state court's factual findings. *Id.*

## IV. DISCUSSION

The Petitioner raises an argument based on ineffective assistance of counsel and two arguments founded on violations of Double Jeopardy. The Court is persuaded by the Petitioner's argument based on ineffective assistance of counsel, and therefore, will not reach the merits of the Petitioner's Double Jeopardy arguments.

### A. **Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are measured under a two-part analysis

outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 689-90. Second, the petitioner must demonstrate he was prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If the petitioner shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. *Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297 (4th Cir. 1992).

Applying this two-prong test here the Court finds that the Petitioner's counsel was ineffective. First, the Petitioner filed his motion based on a misunderstanding of the sentencing statutes. The Petitioner's counsel should have attempted to resolve this misunderstanding of the law and should have advised the Petitioner that moving forward was not in his best interest. If the attorney did attempt, but was unable, to resolve this misunderstanding the attorney should have advised the court that this motion was not in the best interests of the Petitioner and was founded on a misunderstanding of the law. Moreover, the 2013 sentencing court reviewed in detail with the Petitioner how moving forward may affect his sentence. The 2013 sentencing court's explanations were incorrect,

however, the Petitioner's attorney never corrected the court.  Furthermore, the sentencing court issued an order sentencing the Petitioner differently to that which was pronounced in open court, and yet the Petitioner's counsel again failed to object.  This was a repeated failure to do what was in the best interests of the Petitioner.

Second, the Petitioner was injured.  As a result of the ineffective assistance, the Petitioner's sentence was increased by five years on the low end and up to life on the high end.[3]

### B. Double Jeopardy

The Petitioner raises two arguments that the resentencing violates Double Jeopardy. Both of these arguments are predicated on the theory that the 1995 sentencing court sentenced, or should have sentenced him, to one 15-year-to-life sentence.  This is a misunderstanding of the facts and the law.

First, this is a misunderstanding of the facts because the court never sentenced him to 15-years-to-life.  Indeed, the 1995 sentencing court discussed this sentence, however, it ultimately sentenced him on each of the three counts individually.  Second, this is a misunderstanding of the law because, as explained in footnote 2, *supra*, the Petitioner was never entitled to only one 15-year-to-life sentence.

Although the Petitioner's arguments are unpersuasive, his Double Jeopardy rights may have indeed been violated.  This however, raises unsettled questions of Constitutional

---

[3]This Court takes no position on whether the Circuit Court at the resentencing hearing acted appropriately in offering to reinstate the original, incorrect sentence. However, it quite clear that the sentence imposed not what was explained to the Petitioner at the resentencing hearing.

law.  For example, in this case, the Supreme Court of Appeals of West Virginia relied on *State ex rel. Daye v. McBride*, 222 W. Va. 17, 23, 658 S.E.2d 547, 547 (2007) in holding that the Petitioner's increased sentence did not violate Double Jeopardy.  ECF No. 19-6 at 4.  In *Daye* the Supreme Court of Appeals of West Virginia held that correcting an illegal sentence does not violate Double Jeopardy.  However, in *Daye* the court corrected the petitioner's sentence in a matter of weeks.  Here, more than seventeen years had passed before the sentence was corrected.  Moreover, the Supreme Court has recognized that the Double Jeopardy clause may protect "against additions to a sentence in a subsequent proceeding that upset a defendant's legitimate expectation of finality."  *Jones v. Thomas*, 491 U.S. 376, 385 (1989).  Therefore, the balance between the states power to correct an illegal sentence and the Petitioner's expectation of finality is unclear.  Thus, this Court will not decide that issue because it is recommended that the petition be granted on other grounds.

### C. Petitioner's Other Motions

On July 21, 2016, the Petitioner filed a Motion to Amend the Petition, [ECF No. 28] a Motion for Stay and Abeyance [ECF No. 29], and a Motion to Strike  Exhibits. ECF No. 30. When read together the Petitioner is asserting that he has raised an unexhausted claim in State court since the filing of his Petition.  Therefore, the Petitioner asks this Court to stay his Petition so he may exhaust that claim.  The new claim Petitioner seeks to assert is that upon resentencing him, the Circuit Court vindictively increased his sentence in response to his filing a motion to correct sentence. However, the undersigned is of the opinion that the Petitioner cannot possibly demonstrate any facts to support this claim. As

has been noted throughout this Report and Recommendation, the Petitioner was given an incorrect sentence in his original sentencing in 1996. The Petitioner moved to correct that sentence seventeen years later, and his motion was granted. Although the sentence actually imposed was greater than was explained during his second sentencing hearing, it is, nonetheless, a correct sentence under West Virginia law. Moreover, because the undersigned is recommending that the original petition be granted based on ineffective assistance of counsel, an amendment and a stay and abeyance is unnecessary.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's § 2254 petition [ECF No.1] be **GRANTED**, and this matter be remanded to the Circuit Court of Marion County for a new sentencing hearing. The Respondent's [ECF No. 20] Motion for Summary Judgment be **DENIED**. It is further **RECOMMENDED** that the Petitioner's Motion to Amend [ECF No. 28], Motion for Stay and Abeyance [ECF No. 29], and Motion to Strike Exhibits [ECF No. 30] be **DENIED** as moot.

Within fourteen days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further **DIRECTED** to provide a copy to counsel via electronic means.

DATED: January 30, 2017

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE